UNITED STATES of America, Plaintiff–Appellee,

v.

Miguel Jorge ASSEFF, Nestor Jesus Mena, Jorge Lopez, Defendants–Appellants.

No. 89–5823 Non–Argument Calendar.

United States Court of Appeals, Eleventh Circuit.

Nov. 20, 1990.

---

Fred Schwartz, Adorno & Zeder, Miami, Fla., for Asseff.

Clifford B. Hark, Miami, Fla., for Lopez.

Bruce E. Lowe, Lynne W. Lamprecht, Linda C. Hertz, Dawn Bowen, Asst. U.S. Attys., Miami, Fla., for plaintiff-appellee.

Before TJOFLAT, Chief Judge, ANDERSON and BIRCH, Circuit Judges.

PER CURIAM:

Defendants-appellants Miguel Jorge Asseff, Nestor Jesus Mena and Jorge Lopez appeal their enhanced sentences as being improper under the United States Sentencing Guidelines (Guidelines), promulgated under the Sentencing Reform Act of 1984, 18 U.S.C. § 3551 *et seq.* (1988). Pursuant to a plea agreement, defendants-appellants and codefendant Maria Hoyos pled guilty to the charge of using a telephone in committing a drug offense. After reviewing the record in this case, we affirm.

## I. BACKGROUND

On November 14, 1988, the United States Drug Enforcement Agency (DEA) obtained a large cocaine shipment that arrived in Miami, Florida, by using a confidential informant. Acting under instructions from an unidentified person, the informant placed the cocaine in a brown Chevrolet Impala. Two bales of cocaine were placed in the back passenger compartment of the car and were covered with black felt covering to appear to be the bench seat, which had been removed. The remaining cocaine bales were stored in the trunk.

Under DEA surveillance, the informant delivered the vehicle to a northwest Miami address. An unidentified person then drove the car to the Westland Mall in Miami, and left it there. DEA agents observed Mena, driving a blue pickup truck, circle the Impala at least twice during the late night and early morning hours.

On November 15, 1988, Mena and Asseff arranged a meeting. Mena informed Asseff that he needed the car moved because he thought that it might contain drugs and that he was being followed. Mena agreed to pay Asseff $1,000 to move the car.

On the afternoon of November 15, 1988, DEA agents saw Asseff and codefendant Hoyos arrive at the Westland Mall. Hoyos drove the Impala to an apartment complex in the proximate Kendall area of Miami, and entered one of the apartment units. Shortly thereafter, Asseff and Lopez arrived and went into the same apartment. Obtaining the car keys from Hoyos, Asseff and Lopez opened the trunk of the Impala three or four inches when they detected the odor of drugs. Asseff closed the trunk, returned to the apartment, and called Mena.

Leaving the Impala in the apartment parking lot, Asseff and Lopez drove to a convenience store where they met Mena.

While Mena and Asseff had a discussion inside the store, Lopez made several calls from a pay telephone near the front door of the store. Undisputed evidence showed that the calls made by Lopez were in furtherance of the drug operation. Lopez was arrested at the convenience store. Mena and Asseff left the convenience store in the blue pickup truck driven the previous night by Mena; they were arrested after they ran a red light. Following his arrest, Asseff was seated in the rear of the DEA vehicle. DEA agents found keys fitting the Impala stuffed into the rear seat where Asseff sat.

When DEA agents seized the Impala at the apartment complex, a strong odor of cocaine emanated from inside the car and the trunk. Analysis of the seized cocaine revealed 278.60 kilograms of 91 percent pure cocaine. This amount and quality is the equivalent of 227.9 kilograms of 100 percent pure cocaine.

Pursuant to plea agreements with the government, each defendant-appellant and codefendant Hoyos pled guilty to a superseding information which charged a single count of unlawful use of a communication facility, the telephone, in violation of 21 U.S.C. § 843(b) and (c) and 18 U.S.C. § 2.[1] Defendants-appellants' respective plea agreements provided that the government made no agreement regarding sentencing. The presentence investigation report (PSI) for each defendant-appellant calculated the Guidelines range to be six to twelve months of incarceration based on a base offense level of 12 under § 2D1.6, minus two levels for acceptance of responsibility under § 3E1.1(a), and a criminal history of category I. Because Guidelines § 2D1.6 has no specific offense characteristic and the underlying offense was a drug offense, each PSI recommended that the court consider the amount of cocaine seized

---

1. The original, two-count indictment charged defendants-appellants and codefendant Hoyos with conspiracy to possess over five kilograms of cocaine with intent to distribute in violation of 21 U.S.C. § 846, and with possession of over five kilograms of cocaine with intent to distribute in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. The government permitted defendants-appellants and codefendant Hoyos to plead to a substantially reduced charge because of an ongoing companion investigation which would have been jeopardized if this case had gone to trial because of the likelihood that the identity of the confidential informant, who was involved in both investigations, would be disclosed.

as the basis for enhancing the respective sentences under Guidelines § 5K2.0. Departing from the Guidelines under this permissible rationale allowed the district court an increased sentence for each defendant-appellant to the statutory maximum of four years (48 months) under 21 U.S.C. § 843(c). Furthermore, the respective PSIs noted that the applicable sentencing range for defendants-appellants' conduct (possession and conspiracy to possess over 200 kilograms of cocaine) would have been between fifteen and nineteen years.

After reviewing defendants-appellants' PSIs and considering the arguments of the parties, the district court decided that aggravating circumstances of a kind and to a degree existed that were not adequately contemplated by the Sentencing Commission in formulating the Guidelines, specifically, the purity and quantity of the drugs involved. Accordingly, the district court sentenced defendants-appellants each to four years of imprisonment.[2] As before the district court, defendants-appellants on appeal contend that an upward departure from the Guidelines in their sentencing was unwarranted because they each had a minor role in the offense as merely transporters of the cocaine with no knowledge of the quantity involved.[3]

## II.  DISCUSSION

■■■  Review of an appeal from a sentence imposed under the Guidelines requires evaluation of the district court's factual findings under the clearly erroneous standard. 18 U.S.C. § 3742(e); *United States v. Scroggins*, 880 F.2d 1204, 1206 n. 5 (11th Cir.1989), *cert. denied,* ―— U.S. ――, 110 S.Ct. 1816, 108 L.Ed.2d 946 (1990). Specifically, the sentencing court's determination regarding a defendant's role in the offense is a factual finding subject to the clearly erroneous standard. *United*

States v. Taxacher, 902 F.2d 867, 873 (11th Cir.1990); *United States v. Erves,* 880 F.2d 376, 381 (11th Cir.), *cert. denied,* ―— U.S. ――, 110 S.Ct. 416, 107 L.Ed.2d 381 (1989). Under 18 U.S.C. § 3553(b), a sentencing court may depart from the Guidelines range for a particular sentence when aggravating circumstances are present " 'of a kind, or to a degree' " not adequately taken into account by the Sentencing Commission in formulating the Guidelines and that should result in a different sentence. *See* Guidelines § 5K2.0 (quoting 18 U.S.C. § 3553(b)).

This court has established a three-part test for reviewing an upward departure under § 3553(b):

First, was the aggravating circumstance cited by the district court adequately taken into consideration by the Sentencing Commission in formulating the guidelines? Second, if adequate consideration was not given to the circumstance, was consideration of the circumstance consistent with the goals of the sentencing guidelines? If the circumstance was properly taken into account, was the extent of the departure from the guideline range reasonable?

*United States v. Shuman,* 902 F.2d 873, 875–76 (11th Cir.1990) (citations omitted). We, therefore, must consider each component of the test.

■■  The Guidelines provide punishment for defendants convicted of drug felonies based upon the amount of drugs involved. While this case actually is a drug felony, the government agreed to permit defendants-appellants to plead to the nondrug offense of using a communication facility, a telephone, to commit a drug offense. The district court would have been constrained to apply Guidelines sentences that failed to take into account the magnitude of defendants-appellants' drug offense had it not gone outside the applicable Guidelines range of incarceration for six to twelve

---

**2.** Defendants-appellants Asseff and Lopez presently are incarcerated and serving their respective sentences. Defendant-appellant Mena, who was released on bond pending his appeal, was arrested by Immigration and Naturalization Service agents and deported inadvertently to Colombia.

**3.** Although defendant-appellant Lopez did not file a separate appellate brief, he was granted leave to adopt by reference the appellate brief filed by his codefendant Asseff.

months. Clearly, this case presents an aggravating circumstance not adequately considered by the Sentencing Commission.

■ Because we have determined that the district court would have been restricted to a sentence that was not commensurate with the actual quantity of cocaine involved in defendants-appellants' offense, we must consider whether this aggravating circumstance is consistent with the goals of the Guidelines, the second part of the *Shuman* test. Defendants-appellants conspired to further the distribution of an extraordinarily large shipment of cocaine into the United States. The testimony and evidence show that all defendants-appellants knew, or reasonably should have known, that a great quantity of cocaine was involved. Mena offered Asseff $1,000 to move a parked car at a local mall to a nearby apartment complex. Mena also told Asseff that he suspected that the car contained drugs and that he was being followed. The removal of the back seat of the Impala to increase storage space for the cocaine bales as well as the distinct cocaine odor from the back passenger compartment and the trunk had to have been an indication to Asseff and Lopez that a considerable amount of cocaine was stored in the car. Asseff and Lopez also looked into the trunk and verified the sizeable cocaine load being transported by the vehicle.

There is no indication in the record that defendants-appellants' participation in this drug operation was contingent upon the amount of cocaine involved. Knowingly and willingly, defendants-appellants transported an exceedingly large, highly pure amount of cocaine, and the district court found them properly accountable for the amount seized. Furthermore, defendants-appellants have not challenged the quantity and quality of cocaine seized which the district court considered in deciding to depart from the Guidelines in sentencing. We conclude that the district court's consideration of the amount and purity of the cocaine involved is consistent with the goals of the Guidelines. *See United States v. Crawford,* 883 F.2d 963 (11th Cir.1989).

■ Having determined that the district court appropriately took into account the quantity and quality of cocaine that defendants-appellants transported, we must determine if the departure from the Guidelines range was reasonable under the third part of the *Shuman* test. Based on the amount of cocaine involved, the district court could have sentenced defendants-appellants to imprisonment ranging from fifteen to nineteen years had it been able to sentence them for their actual conduct under the Guidelines. Given the applicable sentencing range for the quantity of cocaine involved, we find that four years of imprisonment for defendants-appellants is a reasonable departure from the Guidelines for the offense to which they pled guilty.

■ While all defendants-appellants have argued that they are entitled to a downward adjustment in their sentencing for their respective "minor" or "minimal" roles in the cocaine transportation, the argument is applicable to Asseff and Mena only.[4] The Guidelines commentary defines a "minimal" or "minor" participant in a criminal activity for the purpose of entitling the defendant to a downward adjustment in sentencing as follows:

1. Subsection (a) applies to a defendant who plays a minimal role in concerted activity. It is intended to cover defendants who are plainly among the least culpable of those involved in the conduct of a group. *Under this provision, the defendant's lack of knowledge or understanding of the scope and structure of the enterprise and of the activities of others is indicative of a role as minimal participant.*

2. *It is intended that the downward adjustment for a minimal participant will be used infrequently. It would be*

---

**4.** Defendant-appellant Lopez failed to object to the denial of a downward adjustment of his base offense level. Instead, he sought to have his minor role considered in determining his sentence within the applicable Guidelines range.

Consequently, Lopez is precluded from raising this issue initially on appeal. *See United States v. Prichett,* 898 F.2d 130, 131 (11th Cir.1990) (per curiam).

*appropriate*, for example, for someone who played no other role in a very large drug smuggling operation than to off-load part of a single marihuana shipment, or *in a case where an individual was recruited as a courier for a single smuggling transaction involving a small amount of drugs.*

Guidelines § 3B1.2, Commentary, Application Notes 1, 2 (emphasis added). It is evident that defendants-appellants' conduct does not warrant a downward adjustment in sentencing because of their apparent knowledge of their criminal activity and the great amount of cocaine involved. We cannot find that the district court was clearly erroneous in deciding that their role was not minor.

We have determined that the district court's sentencing of defendants-appellants outside of the Guidelines satisfies the *Shuman* test and that its conclusion that defendants-appellants were more than minor participants in the transportation of a large quantity of high quality cocaine is not clearly erroneous. The sentences imposed by the district court upon defendants-appellants are AFFIRMED.