**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Winston Allston GRIFFIN, Defendant–Appellant.**

**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Denva Hylton EDWARDS, Defendant–Appellant.**

Nos. 90–8200, 90–8201.

United States Court of Appeals, Eleventh Circuit.

Oct. 22, 1991.

Stephen A. Delaney, Howard and Delaney, Marietta, Ga., for Griffin.

Seth Kirschenbaum, Davis, Zipperman, Kirschenbaum & Lotito, Atlanta, Ga., for Edwards.

Joe D. Whitley, U.S. Atty., James W. Kesler, Asst. U.S. Atty., Atlanta, Ga., for the U.S.

Before FAY and COX, Circuit Judges, and MORGAN, Senior Circuit Judge.

MORGAN, Senior Circuit Judge:

This case concerns various issues pertaining to the sentencing of coconspirators in a drug distribution operation. The district court concluded that transactions with crack cocaine, the amount of cocaine involved, and a supervisory or managerial function were factors enhancing the sentences. Upon review of the record, we affirm.

## I. BACKGROUND

Defendants-appellants Winston Allston Griffin and Denva Hylton Edwards participated in a drug distribution conspiracy operating in the metropolitan Atlanta, Georgia area.[1] The drug operation acquired

---

1. The drug distribution operation in which Griffin and Edwards participated involved numerous individuals. In this appeal, we focus on the activities of Griffin and Edwards.

marijuana from Houston, Texas, and cocaine from Miami, Florida. Rental vehicles were leased in Atlanta and driven to these source cities to obtain the drugs, which were repackaged and sold in Atlanta.

Following a high-speed chase and his arrest for traffic offenses, Charlton Bruff, a resident alien from Jamaica who participated in the drug distribution and who was on probation for a prior state marijuana felony conviction, agreed to function as an informant within the drug operation. In October, 1988, Edwards gave Bruff the downpayment to secure a metropolitan Atlanta apartment from which Bruff could sell drugs. In November and December, 1988, Edwards delivered varying quantities of marijuana to Bruff for sale from this apartment. Bruff gave the marijuana to a Georgia Bureau of Investigation (GBI) agent, who supplied Bruff with money for anticipated sales to create the impression that Bruff actually was selling the drugs received from Edwards. Additionally, Edwards had introduced Bruff to Griffin, a/k/a "Manager," in November, 1988. Having been at Griffin's apartment on various occasions, Bruff knew that Griffin sold marijuana, cocaine and crack cocaine from his apartment as well as supervised the manufacture of crack cocaine there.

On November 24, 1988, Edwards and Bruff went to Houston to obtain marijuana, and on November 27, 1988, and December 20, 1988, they traveled to Miami to acquire cocaine. Bruff estimated that forty pounds of marijuana and five kilograms of cocaine collectively were acquired on these trips. Edwards paid for the drugs. On each of these trips, Bruff secreted the drugs in the interior walls of the rental van.

Prior to the second trip to Miami for cocaine, a meeting was held in Griffin's apartment to collect money and to make arrangements for the purchase of more cocaine in Miami. On December 25, 1988, Edwards delivered to Bruff fourteen "dime bags" containing suspected crack cocaine, which Bruff stated had come from Griffin. Bruff gave authorities information enabling them to verify two trips when Edwards traveled without Bruff to Houston to obtain marijuana. On the second of these trips to Houston, Edwards and a coconspirator were apprehended and arrested for the unlawful possession of approximately thirty-six pounds of marijuana.

On December 29, 1988, Bruff received twenty dime bags of suspected crack cocaine from Griffin at Griffin's apartment. Bruff gave this cocaine to the GBI case agent. An undercover Federal Bureau of Investigation (FBI) agent made two cocaine purchases from Griffin at Bruff's apartment, and negotiated a third. Undercover agents observed both Edwards and Griffin with firearms when drug transactions were conducted.

Griffin and Edwards, together with other coconspirators, were indicted by a federal grand jury for various offenses relating to an ongoing conspiracy to transport marijuana from Houston and cocaine from Miami for distribution in the Atlanta area. Pursuant to plea agreements, Griffin and Edwards pled guilty to interstate travel to promote an enterprise involving the possession and distribution of marijuana and cocaine in violation of 18 U.S.C. § 1952(a)(3). Griffin additionally was charged with using a telephone to facilitate a drug distribution offense in violation of 21 U.S.C. § 843(b). Griffin was sentenced to imprisonment for 108 months,[2] and Edwards was sentenced to imprisonment for 120 months.[3] Griffin and Edwards have appealed the propriety of their sentences under the Sentencing Guidelines.

## II.  ANALYSIS

### A.  Standard of Review

When reviewing a sentence under the Sentencing Guidelines, "this Court accepts the district court's findings of facts unless

---

**2.** Griffin was subject to a 60–month maximum sentence under 18 U.S.C. § 1952(a), and a 48–month maximum sentence under 21 U.S.C. § 843(b).

**3.** Edwards was subject to a maximum sentence of 60 months for each of two counts under 18 U.S.C. § 1952(a).

they are clearly erroneous and gives due deference to a district court's application of the sentencing guidelines to those facts." *United States v. Marin,* 916 F.2d 1536, 1538 (11th Cir.1990) (per curiam) (citing 18 U.S.C. § 3742(e)); *see United States v. Asseff,* 917 F.2d 502, 505 (11th Cir.1990) (per curiam) (The clearly erroneous review standard applies to the factual findings upon which a district court bases a sentence under the Sentencing Guidelines.). Griffin and Edwards have raised various issues concerning their respective sentences imposed by the district court under the Sentencing Guidelines. After reviewing the record, we have determined that only three claims regarding enhancement of the sentences warrant analysis: the transactions with crack as opposed to powder cocaine, the amount of cocaine involved, and a co-conspirator's supervisory role.

## B. Rock or Powder?

■ Both Griffin and Edwards complain that their sentences improperly were increased by two levels because the district court concluded that crack, as opposed to powder cocaine, was distributed in the December 25 and 29, 1988 transactions. "Crack," or cocaine in free base form, is a solid, rock-like substance, whereas the term "cocaine" generally refers to the powder form, which contains hydrochloric acid. *See United States v. Williams,* 876 F.2d 1521, 1525 (11th Cir.1989). Under the Sentencing Guidelines Drug Equivalency Tables, one gram of crack cocaine is treated as twenty grams of heroin, whereas one gram of powder cocaine is equivalent to .2 grams of heroin. This court has recognized that "the difference in penalties between crack and other forms of cocaine demonstrated that Congress considered crack to be a more powerful and dangerous drug." *United States v. Catchings,* 922 F.2d 777, 780 n. 3 (11th Cir.) (per curiam), *cert. denied,* —— U.S. ——, 111 S.Ct. 1633, 113 L.Ed.2d 729 (1991); *see Williams,* 876 F.2d at 1525 (Congress "intended to enhance penalties for crack dealers."); *see also United States v. Robinson,* 870 F.2d 612, 613 (11th Cir.1989) (per curiam) (This

court held that a small portion of crack cocaine could result in the permissible inference that the possessor planned to distribute the crack, even if the same amount of powder cocaine would not justify the distribution presumption.).

In concluding that the two transactions in question involved crack cocaine as opposed to powder cocaine, Griffin and Edwards contend that the district judge considered hearsay, rather than reliable evidence. The probation officer did not compute the cocaine as crack in the respective presentence investigation reports because the lab report merely indicated that the drug was cocaine, and did not state the type or form of cocaine. At the sentencing hearing, the district judge directed the GBI case agent to contact the chemist, who analyzed the cocaine, to ascertain if a determination was made regarding the type of cocaine involved. The agent reported that the chemist did not make such a determination because Georgia law does not require a distinction between crack and powder cocaine.

Bruff, the confidential informant who handled the cocaine package, told the GBI agent to whom he gave the cocaine that it was crack. The GBI agent testified that he identified the cocaine by sight because "it had the consistency of crack cocaine." R6–6–140. In concluding that the cocaine was crack, the district court reasoned:

> It seems to the Court on that issue that Mr. Griffin—or it is established that Mr. Griffin on occasions manufactured crack. That's an opportunity. Apparently, it was given to Mr. Bruff with the representation that it was crack. He had the opinion that it was—or belief that it was crack, and this agent confirmed it, so I find that it's crack.

R6–6–141.

■ "[B]oth the Sentencing Guidelines and case law from this circuit permit a district court to consider reliable hearsay evidence at sentencing." *United States v. Query,* 928 F.2d 383, 384 (11th Cir.1991); *see* Sentencing Guidelines § 6A1.3(a) (A sentencing court "may consider relevant information without regard to its admissi-

bility under the rules of evidence applicable at trial, *provided that the information has sufficient indicia of reliability to support its probable accuracy."* (emphasis added)). This court has held that a sentencing court may "consider any information, including reliable hearsay from the trial of a third party, so long as the defendant has 'the opportunity to rebut the evidence or generally to cast doubt upon its reliability.'" *Query,* 928 F.2d at 385 (quoting *United States v. Castellanos,* 904 F.2d 1490, 1496 (11th Cir.1990)). Griffin and Edwards were given ample opportunity at the sentencing hearing to challenge the testimony of Bruff and the GBI agent.[4] Additionally, they have pursued their arguments in this appeal. Because the district judge based his decision that crack instead of powder cocaine was involved in two transactions on testimony sufficiently reliable to have probable accuracy, we conclude that his determination was not clearly erroneous.

## C. Determination of the Cocaine Quantity Involved

■ Griffin and Edwards contest the district court's sentencing determination that two kilograms of cocaine were involved in the December 20, 1988 sale because they contend that the court's conclusion regarding the cocaine amount was based on unreliable testimony from Bruff. They assert that they pled guilty with the understanding that one kilogram of cocaine would be attributed to the December 20, 1988 transaction. Their respective presentence investigation reports allocated the acquisition of two kilograms of cocaine to the first trip to Miami on November 27, 1988, and three kilograms to the second Miami trip on December 20, 1988. Bruff, who participated in both trips, and an FBI agent testified concerning the cocaine amounts involved in the two trips at the sentencing hearing.

Bruff testified that Edwards told him that three kilograms were in the cocaine package obtained on the second Miami trip. Additionally, Bruff, who handled the co-

caine packages procured on the two Miami trips when he concealed them in the interior walls of the van, testified that the second package was larger. The FBI agent, who debriefed Bruff on December 23, 1988 regarding the second Miami trip, testified that Bruff initially told him that three kilograms of cocaine were obtained, and, in the course of the conversation, changed the amount to two. Bruff, however, told the FBI agent that Edwards informed him that three kilograms of cocaine were involved in the second Miami trip.

Griffin and Edwards attempt to discredit Bruff's testimony with his grand jury testimony, wherein he testified to three kilograms obtained in the first Miami trip and two kilograms acquired in the second Miami trip. When confronted with this discrepancy in his testimony, Bruff admitted that he had been incorrect in his grand jury testimony. In the cumulative cocaine quantity calculation used in determining the respective sentences of coconspirators Griffin and Edwards, the district court found that the factual discrepancy regarding the cocaine amounts involved in the two transactions was a distinction without a difference:

> [T]he least amount you have proved through either one of these witnesses is five. It's just a question of which three and two it is.
>
> . . . .
>
> [I]f you want me to accept the grand jury testimony of the other witness [Bruff] as being true, it's still five, whether it's three and two. If you want me to accept the trial [sentencing] testimony, it's two and three.
>
> . . . .
>
> My view of the evidence is this: In discussing Mr. Bruff's testimony, it is the Court's view of his testimony that . . . he's managed to prove that at all times it was five kilos. It's just a question of which transaction was the big one. . . . It is, in the Court's mind, most likely that

---

4. We note that counsel for Griffin and Edwards had the opportunity specifically to question the

GBI agent regarding his ability to detect crack cocaine. R6–6–138–40.

Mr. Bruff is confusing what happened in the November versus the December trip. I don't think that the December amount is established with sufficient reliability that I can find three kilos on that trip, but I have no doubt based on the state of the record, that two is shown by a preponderance of the evidence.... [I]t is the Court's view that the kilogram that was the subject of negotiation ought to be attributed to the ... conspiracy, and I will do it, so that leaves the net amount the same.[5]

. . . .

I have lowered the second trip to two kilos, but I have given the conspiracy credit for the kilos—the kilo that was being negotiated ... that I don't believe the probation officer has added in. The net effect is a wash.

R6–6–92, 122, 124; *see* Sentencing Guidelines § 2D1.4 Application Note 1 (*"If the defendant is convicted of an offense involving negotiation to traffic in a controlled substance, the weight under negotiation in an uncompleted distribution shall be used to calculate the applicable amount,"* unless the court finds that the defendant lacked the intent and ability to deal in the negotiated amount. (emphasis in original)). Edwards was given the opportunity to testify regarding the cocaine amount involved in the December 20, 1988 acquisition, and elected not to do so.

"The determination of the quantity of drugs involved in a conspiracy for the purpose of sentencing is a factual determination subject to the clearly erroneous standard." *United States v. Davis,* 902 F.2d 860, 861 (11th Cir.1990); *see United States v. Robinson,* 935 F.2d 201, 205 (11th Cir. 1991) ("[T]he trial court's determination of the quantity of drugs used to establish a base offense level for sentencing purposes"

is subject to the clearly erroneous review standard.). As we have discussed herein, a sentencing court may consider reliable hearsay testimony. *Query,* 928 F.2d at 384. The testimony of Bruff and the FBI agent established that the drug conspiracy, of which Griffin and Edwards were a part at all relevant times, involved either distribution of or conspiracy to distribute at least five kilograms of cocaine.

■ The district judge carefully assessed the evidence and reasonably arrived at his determination of two kilograms of cocaine having been involved in the December 20, 1988 acquisition. Although differing from the kilogram amount allocation of the presentence investigation reports, the court allowed for Bruff's inconsistent grand jury and sentencing testimonies in making the final calculations for sentencing. Conviction for possession or distribution of a specified amount of drugs does not preclude the district court from independently determining the amount of drugs involved in the overall offense and using that amount to assign the defendant an initial base offense level. *See United States v. Scroggins,* 880 F.2d 1204, 1210–11 (11th Cir.1989), *cert. denied,* — U.S. —, 110 S.Ct. 1816, 108 L.Ed.2d 946 (1990); *see also United States v. Jacobo,* 934 F.2d 411, 416–17 (2d Cir.1991) (In determining the amount of cocaine involved, the sentencing court is required under the Sentencing Guidelines to make an independent assessment of defendants' intent and ability to deal in negotiated quantities.). Based upon the testimony, we conclude that the district court's determination that the December 20, 1988 acquisition involved two kilograms of cocaine, which amount was calculated together with two kilograms from the November 27, 1988, Miami trip, plus the negotiation involving one kilogram of cocaine, to arrive at a cumulative amount of five kilograms, was not clearly erroneous.

---

**5.** The undercover FBI agent, who had purchased one ounce of cocaine previously, met again on February 24, 1989, with the drug distribution leader, who had advised that he was in the process of arranging for one kilogram of cocaine to be acquired in Miami on February 26, 1989, to be delivered in Atlanta on February

27, 1989. At the sentencing hearing, the district judge stated that the probation officer was erroneous to have omitted this kilogram of cocaine in calculating the cocaine quantity for the conspiracy, because the evidence showed that the conspiracy intended to possess and distribute at least this one kilogram of cocaine, although the

### D. Managerial or Supervisory Role

■ Edwards argues that his sentence should not have been increased by two levels under the Sentencing Guidelines for being a manager or supervisor, since he dealt with the government informant Bruff and was not shown to advance the interests of the drug distribution conspiracy. The evidence revealed that Edwards, a coconspirator in the drug distribution operation, financed the apartment from which Bruff[6] sold drugs, subsequently arranged for a roommate "Tony" to help Bruff with the sale of marijuana and cocaine, had drugs delivered to the apartment for these men and others to sell, collected the money from drug sales, and planned and executed trips to obtain drugs with and without Bruff. The Sentencing Guidelines provide for a two-level increase in a sentence "[i]f the defendant was an organizer, leader, manager, or supervisor *in any criminal activity....*" Sentencing Guidelines § 3B1.1(c) (emphasis added).

At the sentencing hearing, the district judge explained his reasons for considering Edwards to have functioned in a supervisory or leadership capacity, when his attorney contended contrariwise:

When they [Edwards and Bruff] went to Houston, didn't he [Edwards] boss Bruff around? Do you deny that? Didn't he say, go here, go there, do this, do that? Are you going to tell me that he did not set Bruff up in an apartment or give him rent money or bring him drugs to sell?

. . . .

That's one, two, three, four, five, six, seven, eight transactions, not counting

the two crack transactions where he brought drugs to a lower person to sell. Are you going to contend as a matter of law that that's not within the ambit of that level—that last level [Sentencing Guidelines § 3B1.1(c) ]?

. . . .

I have heard you out on these ... transactions, let me count them again, one, two, three, four, five, six, seven, eight, nine, ten transactions, and assuming, for the sake of argument, that this was not a part of the ... conspiracy, it is nevertheless criminal activity for which he is responsible, and he clearly is a leader in those transactions.

. . . .

What I said to you, and let me be precise about it, is that the information contained in the presentence report having to do with the beginning of the Bruff activity at that house which then gives rise to transactions of 11/15, 11/22, 11/30, 12/9, 12/10, 12/12, 12/19, 12/19, 12/25, 12/29, which are distributions for resale by your client [Edwards], and considering the surrounding circumstances of Bruff's coming to be there, *I believe that those facts alone would establish that he was a leader for the purposes of the guidelines.*

. . . .

The point ... is that all of this argument that we're having focuses on the word leader or supervisor. *It nowhere says that he's got to be a supervisor of a big dope ring.... It just says he's got to be in a leadership capacity.*

---

transaction was not completed. R6–6–115, 117, 118.

6. Edwards argues that his supervision of Bruff is inapplicable for determining his managerial role because Bruff was a government informant. Bruff was an active member in the drug distribution operation before he became a government informant, and thereafter he continued to function in apparently the same capacity as far as Edwards was concerned. *See United States v. Smith,* 918 F.2d 1551, 1558–59 (11th Cir.1990) (Because there was sufficient evidence of a defendant and a coconspirator's participation in a cocaine importation conspiracy be-

fore the coconspirator became a government informant, this court found that recorded telephone conversations between the defendant and government informant were admissible.). This court also has found that a coconspirator, who was subordinate to the marijuana supplier and arranged for the delivery and transportation of marijuana from Jamaica into the United States, including coordinating the smuggling with an undercover GBI agent posing as a pilot, had a supervisory role in ensuring the success of the importation operation within the meaning of the Sentencing Guidelines § 3B1.1. *United States v. Jones,* 933 F.2d 1541, 1547 (11th Cir. 1991).

. . . .

The question is, is he selling it [drugs] on the street corner, or has he got somebody on the street corner selling it. If he is the person who has the 16–year–old kid on the street corner, and he is supplying it to him for sale, then I would contend that he is a leader or a supervisor of that person.

R6–6–168–69, 172, 179–80, 181–83 (emphasis added).

■ A sentencing court's determination of a defendant's role in a crime is a finding of fact reviewed under the clearly erroneous standard. *United States v. Asseff,* 917 F.2d 502, 505 (11th Cir.1990) (per curiam). Among the factors given in the commentary to section 3B1.1 to be considered by the district court in determining a managerial or supervisory role are whether the defendant exercised "decision making authority," and "the degree of control and authority exercised over others." Sentencing Guidelines § 3B1.1, Application Note 3; *United States v. Castillo–Valencia,* 917 F.2d 494, 502 (11th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 1321, 113 L.Ed.2d 253 (1991); *see United States v. Jones,* 933 F.2d 1541, 1547 (11th Cir.1991) (The defendant's subordinate role to the marijuana supplier nevertheless included the supervisory role of "coordinating and managing the delivery and transportation of the marijuana from Jamaica into the United States," which involvement demonstrated that he "had the responsibility of ensuring that the contemplated smuggling venture would succeed."). In *United States v. Howard,* 923 F.2d 1500, 1503 (11th Cir.1991), the defendant, who became a government informant, properly had his sentence enhanced for his managerial role because he acted as "a source of credit" and "maintained at least constructive control" over the individual to whom he provided the drugs and collected payment. Edwards functioned in the same way, and it is apparent that his funds were derived from the drug distribution conspiracy. For the purpose of enhancing his sentence for acting as a manager or supervisor, it is sufficient that Edwards specifically directed the participation of Bruff and his roommate in their operation in the drug distribution conspiracy. *"The defendant need not be a sole leader or a kingpin, only a supervisor or manager."*[7] *United States v. Smith,* 918 F.2d 1501, 1513 (11th Cir.1990) (emphasis added). We conclude that the district court was not clearly erroneous in evaluating Edwards's managerial or supervisory role in the drug distribution operation and, thus, increasing his sentence by two levels.

## III. CONCLUSION

For the reasons analyzed herein, we AFFIRM the district court's conclusions under the Sentencing Guidelines concerning increased sentences for transactions involving crack as opposed to powder cocaine, the amount of cocaine, and Edwards's managerial role in the drug distribution conspiracy.

---

7. In *United States v. Smith,* 918 F.2d 1501 (11th Cir.1990), a confidential informant explained that a coconspirator in a narcotics operation supervised cocaine salesmen, including the provision and collection of money, and that he was known as "Boss" or "Boss Man." This court concluded that the coconspirator acted in a managerial or supervisory role, and reasoned: "The subordinates need not have acted in concert with one another. There can exist separate individual relations between defendant and the subordinates." *Id.* at 1513.