[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APR 2, 2010
JOHN LEY
CLERK

No. 08-16947

_____

D. C. Docket No. 06-00155-CR-2-CAP-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

BRINSON ALLEN,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(April 2, 2010)

Before TJOFLAT, PRYOR and MARTIN, Circuit Judges.

PER CURIAM:

Brinson Allen appeals his convictions and sentence for conspiring to commit

bank fraud, 18 U.S.C. §§ 1344, 1349, bank fraud, id. § 1344, and making false

statements in a credit application, id. § 1014. Allen's convictions stem from his participation as a straw borrower and purchaser in a fraudulent scheme operated by his wife. Allen challenges the sufficiency of the evidence to support his convictions, the calculation of the loss that he intended to cause, the denial of his request for a sentencing reduction based on his minor role in the offense, and the procedural and substantive reasonableness of his sentence. After careful review, we affirm.

## I. BACKGROUND

Allen's wife, Adriene Newby-Allen, operated an extensive mortgage fraud scheme in which she defrauded banks into loaning her millions of dollars to purchase real estate in the Atlanta, Georgia, area at inflated sales prices. Allen participated in the scheme as a straw borrower and purchaser; he purchased real estate in his name by obtaining loans based on false qualifying information. Two of the banks that Allen and Newby-Allen attempted to defraud became suspicious and notified the Federal Bureau of Investigation.

Agents worked with the banks to plan a sting closing for Allen's attempted purchase of the house at 320 Longvue Court, and agents arrested Allen at the closing. Allen was indicted for conspiring to commit bank and wire fraud, 18 U.S.C. §§1343–44, 1349; four counts of bank fraud, id. § 1344; making false

2

statements in a credit application, id. § 1014; and making false statements in a loan application, id. At trial, the government presented evidence that Allen participated in several fraudulent transactions, but only two transactions are relevant to this appeal.

The government presented evidence that Allen attempted to purchase the house at 320 Longvue Court. The list price for the house was $1.639 million, but Allen and Newby-Allen entered into a contract to purchase it for $3.3 million. The sales contract provided that the sellers would receive $1.65 million and that the remaining $1.65 million would be placed in escrow to be used for repairs. Allen applied for mortgage loans to fund the transaction. The loan applications falsely represented Allen's employment, income, and assets, and falsely reported that Allen owned certain real estate. Allen testified that a loan officer, J. Lynn, who was also a participant in the scheme, brought the loan applications to Allen's house, showed Allen where to sign and initial the applications, and left the applications with Allen while Newby-Allen gave Lynn a tour of the house. Allen reviewed the applications "very quickly" and signed them before Lynn returned from the tour.

To facilitate the sting operation, Southstar Funding and Citibank approved loans to Allen that totaled $2.475 million and scheduled a closing for March 13,

2006.  Both Allen and Newby-Allen attended the closing.  Yetta Ellman, the sellers' agent, testified that the HUD-1 settlement statement that was prepared for the closing incorrectly stated that the entire $3.3 million contract price would be paid to the sellers.  At the closing, Ellman mentioned the error and stressed that the parties should not proceed with the closing until the HUD-1 settlement statement was corrected to state that $1.65 million would be placed in escrow.  Newby-Allen responded that the sellers could write Allen a check for the excess amount after the closing, but Ellman told her that transaction would be inappropriate.

Allen signed the errroneous HUD-1 settlement statement.  He never asked the closing attorney to correct the settlement statement or to place any funds in escrow.  Allen also signed the final loan applications after the closing attorney advised him to make sure the numbers were "roughly right."  Allen testified that he quickly reviewed the application documents before he signed them, but he denied knowing that they contained false representations.  He also testified that he believed the excess loan proceeds would be used for "renovations" and "upgrades" of the property.

The government also presented evidence that Allen guaranteed a $50,000 line of credit from Bank of America for Newby-Allen's shell company, F&R Computer Solutions.  Allen testified that he agreed to guarantee the line of credit

4

because he knew that Newby-Allen would be unable to qualify on her own and he believed Newby-Allen would make all necessary payments on the loan. The application information that Newby-Allen provided to Bank of America contained several misrepresentations about F&R Computer Solutions. A representative from Bank of America testified that its policies require the guarantor to be physically present at the closing, to provide two forms of identification, and to sign the promissory note. Bank of America scheduled and held a closing, and the final promissory note purportedly was signed by Allen, on behalf of F&R Computer Solutions. Allen testified that he did not know the application contained false statements, that he did not attend the closing, and that he never signed the promissory note. Allen also testified that he and Newby-Allen agreed to pay a broker $10,000 for his assistance in obtaining the loan.

After a two-week trial, the jury convicted Allen of conspiring to commit bank fraud, 18 U.S.C. §§ 1344, 1349; one count of bank fraud (based on his attempted purchase of the house at 320 Longvue Court), id. § 1344; and making false statements in a credit application, id. § 1014. The jury acquitted Allen of two counts of bank fraud and of making false statements in a loan application. The jury was unable to reach a verdict on a third count of bank fraud.

The district court sentenced Allen to 37 months of imprisonment on each of

5

his three convictions, to run concurrently, as well as five years of supervised release. The advisory guidelines provided a sentencing range of 37 to 46 months of imprisonment. The sentencing range included an enhancement of 14 levels to Allen's base offense level of seven because the district court found that Allen intended a loss on the Longvue Court transaction of $825,000. See United States Sentencing Guidelines § 2B1.1(b)(1)(H) (Nov. 2008). The district court denied Allen's request for a reduction in his offense level based on his minor role in the offense. See id. § 3B1.2.

## II. STANDARDS OF REVIEW

We apply four standards of review in this appeal. First, we review de novo whether sufficient evidence supports a conviction. United States v. Silvestri, 409 F.3d 1311, 1327 (11th Cir. 2005). We view the evidence in the light most favorable to the government, and we make all reasonable inferences and credibility determinations in favor of the government. Id. "A conviction must be upheld unless the jury could not have found the defendant guilty under any reasonable construction of the evidence." United States v. Chastain, 198 F.3d 1338, 1351 (11th Cir. 1999). Second, we review for clear error determinations under the Guidelines as to the amount of actual or intended loss. United States v. Grant, 431 F.3d 760, 762 (11th Cir. 2005). Third, we review for clear error findings as to a

defendant's role in the offense. United States v. Griffin, 945 F.2d 378, 385 (11th Cir. 1991). Fourth, we review a sentence for procedural and substantive reasonableness under an abuse of discretion standard. United States v. Livesay, 587 F.3d 1274, 1278 (11th Cir. 2009).

### III. DISCUSSION

Allen presents four arguments on appeal. We discuss each argument in turn. All of Allen's arguments fail.

*A. Sufficient Evidence Supports Allen's Convictions.*

Allen's argument that the evidence was insufficient to support his convictions for bank fraud and conspiracy to commit bank fraud fails. To prove bank fraud under section 1344, "the Government must prove specific intent to defraud." United States v. Goldsmith, 109 F.3d 714, 716 (11th Cir. 1997). Allen concedes that a scheme to defraud existed, but he contends that the government failed to prove that he was a knowing and intentional participant in that scheme to defraud. A reasonably jury could have found from the circumstances of the Longvue Court transaction that Allen knew that the loan applications he signed contained materially false representations and that Allen intended to further the scheme through his participation. See United States v. Williams, 390 F.3d 1319, 1325 (11th Cir. 2004) (noting that "circumstantial evidence may prove knowledge

7

and intent"). Additionally, the jury could have disbelieved Allen when he testified that he neither knew about the false representations on the loan applications nor shared his wife's fraudulent intent. See United States v. Brown, 53 F.3d 312, 314 (11th Cir. 1995).

Allen's argument that the evidence was insufficient to support his conviction for making false statements in a credit application also fails. Section 1014 makes it a crime to "'knowingly mak[e] any false statement or report . . . for the purpose of influencing in any way the action' of a Federal Deposit Insurance Corporation insured bank." United States v. Wells, 519 U.S. 482, 489–90, 117 S. Ct. 921, 926–27 (1997) (quoting 18 U.S.C. § 1014). Allen contends that the government failed to prove that he signed any documents in connection with the application for the line of credit or that he knew that the documents contained false representations. The government, however, presented evidence that Bank of America requires the guarantor of a loan physically to attend the closing and present two forms of identification, that a closing was held, and that the promissory note for the line of credit purported to contain Allen's signature. A reasonable jury could have found from this evidence that Allen attended the closing and signed the promissory note. A reasonable jury also could have found that Allen knew the credit application contained false qualifying information because Allen was aware

8

that his wife had paid a broker an exorbitant fee in exchange for his assistance in obtaining the loan. See Williams, 390 F.3d at 1325. Additionally, the jury could have disbelieved Allen when he testified that he never signed any documents to obtain the line of credit and that he did not know the application contained false representations. See Brown, 53 F.3d at 314.

B. *The District Court Did Not Clearly Err in Calculating the Loss Amount.*

Allen argues that the district court erred when it found by a preponderance of the evidence that he intended to cause a loss of $825,000, which is the difference between the amount of the loans and the value of the collateral for the loans, on the Longvue Court transaction and increased his offense level under section 2B1.1(b) on that basis. Allen contends that he did not intend to cause any loss on the Longvue Court transaction because he and Newby-Allen planned to use the excess loan proceeds to improve the property, which would have increased the value of the collateral for the loans. We disagree.

The district court did not clearly err when it found that Allen intended a loss of $825,000. Although the sales contract provided that $1.65 million would be placed in escrow for repairs, the HUD-1 settlement statement, which Allen signed at the closing, provided that the sellers would receive $3.3 million. Neither Allen nor Newby Allen corrected the settlement statement or asked the closing attorney

to make sure the excess loan proceeds would be placed in escrow. Quite the contrary, Newby-Allen told the sellers that they could write Allen a check after the closing to settle the difference. The district court did not clearly err in finding that Allen intended to pocket the excess loan proceeds, not use the proceeds to improve the property.

### C. The District Court Did Not Clearly Err by Denying Allen a Sentencing Reduction Based on His Minor Role in the Offense.

Allen contends that the district court clearly erred by denying his request for a reduction in his offense level of at least two levels under section 3B1.2(b). In determining whether a defendant is entitled to a reduction for his mitigating role in the offense, the district court should "measure the defendant's role against the relevant conduct for which []he was held accountable at sentencing," and then the district court should "measure the defendant's role against the other participants . . . in that relevant conduct." United States v. Rodriguez De Varon, 175 F.3d 930, 939 (11th Cir. 1999) (en banc).

The district court did not clearly err by denying Allen a reduction under section 3B1.2(b). At sentencing, Allen was held accountable only for the Longvue Court transaction and the line of credit from Bank of America. Although his role in those transactions was less substantial than that of Newby-Allen or Lynn, his participation nonetheless was integral to the success of the scheme. See United

10

States v. Boyd, 291 F.3d 1274, 1277–78 (11th Cir. 2002). "[T]he fact that a particular defendant may be least culpable among those who are actually named as defendants does not establish that he performed a minor role in the conspiracy." United States v. Zaccardi, 924 F.2d 201, 203 (11th Cir. 1991).

*D. Allen's Sentence is Reasonable.*

Allen contends that his sentence is procedurally unreasonable because the district court incorrectly determined the amount of intended loss, denied his request for a minor-role reduction, and treated the Guidelines as mandatory instead of advisory. Allen's first two arguments fail for the reasons explained above. His third argument also fails.

After careful review of the record, we are satisfied that the district court had a reasoned basis for imposing the sentence that it did. The district court did not treat the Guidelines as mandatory. Treating the Guidelines as mandatory constitutes procedural error, Gall v. United States, 552 U.S. 38, 51, 128 S. Ct. 586, 597 (2007), but the district court need only "set forth enough to satisfy the appellate court that [it] has considered the parties' arguments and has a reasoned basis for exercising [its] own legal decisionmaking authority." Rita v. United States, 551 U.S. 338, 356, 127 S. Ct. 2456, 2468 (2007).

Allen also challenges the substantive reasonableness of his sentence. In

11

reviewing whether a sentence is substantively reasonable, we "take into account the totality of the circumstances, including the extent of any variance from the Guidelines range." <u>Gall</u>, 552 U.S. at 51, 128 S. Ct. at 597. Because Allen's sentence of 37 months of imprisonment is within the guidelines range, we "may, but [are] not required to, apply a presumption of reasonableness." <u>Id.</u> We easily conclude that Allen's sentence of 37 months of imprisonment—a sentence at the bottom of his guidelines range—is substantively reasonable.

## IV. CONCLUSION

We **AFFIRM** Allen's convictions and sentence.