**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Dan G. ALEXANDER, Jr., and Norman Grider, Defendants–Appellants.**

**No. 87–7070.**

United States Court of Appeals,
Eleventh Circuit.

Aug. 2, 1988.

Richard G. Alexander, Alexander & Knizley, Christopher Knight, Haas & Knight, Mobile, Ala., Carter G. Phillips, Sidney & Austin, Washington, D.C., for Dan C. Alexander.

James Atchison, William B. Jackson, II, Mobile, Ala., for Norman Grider.

J.B. Sessions, Richard W. Moore, U.S. Attys., Mobile, Ala., for U.S.

Before HILL and HATCHETT, Circuit Judges, and FLOYD R. GIBSON *, Senior Circuit Judge.

HILL, Circuit Judge:

In this case, the appellants challenge their convictions on charges of mail fraud, extortion and racketeering. They maintain that the mail fraud convictions were obtained in violation of *McNally v. United States*, —— U.S. ——, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987). We reverse in part, based upon *McNally*, and affirm in part.

## I. FACTS

The appellants, Dan Alexander and Norman Grider, were charged in an eleven count indictment. Count one charged the appellants with a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c) (RICO). Count two charged that the appellants violated the Hobbs Act, 18 U.S.C. § 1951, by engaging in a scheme to extort money from architects who obtained contracts with the Mobile County School Board. Finally, counts three through eleven charged the appellants with using the United States Mail in a scheme to defraud the Mobile County School Board and the citizens of Mobile County in violation of 18 U.S.C. § 1341. Following a trial in the district court, the jury found Alexander and Grider guilty on all counts, and they were sentenced to imprisonment. A third co-defendant, Hiram Bosarge, was acquitted.

The facts in this case involve three schemes in which Dan Alexander used his position on the Mobile County School Board to obtain money from businesses and indi-

viduals who wished to do business with the school board. Norman Grider participated in two of those schemes. To summarize briefly, the first scheme was charged as predicate act number one under count one of the indictment. In this scheme, Alexander used his position on the school board to obtain an efficiency study contract for Gulf South Engineers, Inc. In exchange, officials of Gulf South paid Alexander $9,500.

The second scheme was charged in count two and as predicate act number five in count one of the indictment. Between 1980 and 1984 the school board approved the construction of four new schools in Mobile County, and architects were notified that they should submit applications for the projects. Assistant Superintendent Lenwood "Pete" Landrum was responsible for reviewing the applications and recommending an architect for each project. Grider and Alexander worked together to influence Landrum's selection of the architects and to extract various "finders-fees" from the architects who were selected. At trial, Landrum and a number of the architects testified as to the appellants' tactics.

The third scheme was charged in counts three through eleven and as predicate act number three under count one of the indictment. This scheme involved the school board's award of a contract for the installation of an energy management system in over seventy schools in Mobile County. George Hamlin, an engineer in Mobile, was initially unable to obtain a contract with the school board for the energy management system. He then formed a corporation, Energy Research Group, Inc. (ERG), and spoke with Grider about the possibility of obtaining the contract. Hamlin ultimately agreed to pay Grider fifteen percent of the contract if Grider would use his connections to get the school board to award the contract to ERG. Grider spoke with Alexander who then strongly supported the contract in the school board. ERG obtained a 1.6 million dollar contract for the project in August of 1982. Hamlin

---

* Honorable Floyd R. Gibson, Senior U.S. Circuit Judge for the Eighth Circuit, sitting by designa-   tion.

paid Grider approximately $240,000, and Grider transmitted various sums of money to Alexander in the form of legal fees and indirect campaign contributions. The school board mailed payments under the contract on at least nine separate occasions, corresponding to mail fraud counts three through eleven in the indictment.

## II. DISCUSSION

### A. Mail Fraud

██ The appellants challenge their convictions for mail fraud under counts three through eleven of the indictment based upon the Supreme Court's decision in *McNally*. They argue that the convictions cannot stand because the jury may have found them guilty of depriving the local citizens of their right to honest and impartial government, which was held insufficient under the mail fraud statute in *McNally*. We agree.

The judge instructed the jury that the mail fraud scheme had three objects, including the object which *McNally* holds is insufficient. The court instructed the jury as follows:

> "[t]he second object alledged [sic] is that the Defendants Dan Alexander and Norman Grider sought to fraudulently deprive the citizens of a county of their right to have the county's business conducted honestly, impartially, and free from corruption, bias, and official misconduct."

(R14-3301-3302) If the jury convicted the defendants based upon this object of the scheme, the convictions may not stand. The government argues, however, that the jury could not find that the defendants were guilty of depriving the citizens of honest government without also finding that they sought to obtain money through the contract with ERG. We disagree. The instruction stated: "[t]o convict on any or all of Counts Three through Eleven, you need only to find that the scheme sought to achieve only one of these objectives...." (R14-3303) The jury was specifically charged that any one of the objects was sufficient. While it is likely that the jury found that the defendants were involved in a scheme to obtain money, it remains possible that the jury found the defendants guilty under the theory struck down in *McNally*. The instruction expressly provided the jury with that alternative. We therefore reverse the defendants' convictions under counts three through eleven.

### B. Hobbs Act

██ The appellants challenge their convictions under count two on a variety of grounds. First, the appellants contend that the government failed to establish a link between their extortionate scheme and interstate commerce, which is a jurisdictional prerequisite under the Hobbs Act. The government's burden under this requirement is not great. The Supreme Court has stated: "[t]hat Act speaks in broad language, manifesting a purpose to use all the constitutional power Congress has to punish interference with interstate commerce by extortion, robbery or physical violence. The Act outlaws such interference 'in any way or degree.'" *Stirone v. United States*, 361 U.S. 212, 215, 80 S.Ct. 270, 272, 4 L.Ed.2d 252 (1960). The reach of Congress' power under the Commerce Clause is, of course, extensive. Therefore, the government need only show a minimal effect on interstate commerce to sustain jurisdiction under the Hobbs Act. *See United States v. Haimowitz*, 725 F.2d 1561, 1573 (11th Cir.), *cert. denied*, 469 U.S. 1072, 105 S.Ct. 563, 83 L.Ed.2d 504 (1984).

In attempting to establish a link with interstate commerce in this case, the government relied upon the "depletion of assets" theory. "Under that theory, 'commerce is affected when an enterprise, which either is actively engaged in interstate commerce or customarily purchases items in interstate commerce, has its assets depleted through extortion, thereby curtailing the victim's potential as a purchaser of such goods.'" *United States v. Jackson*, 748 F.2d 1535, 1537 (11th Cir.1984) (quoting *United States v. Elders*, 569 F.2d 1020, 1025 (7th Cir.1978)). In the present case, the extortion scheme clearly reduced the assets of the architects. They were paid a

set fee by the school board, and they were forced to pay large sums of that money to Grider. Thus, if the government had offered proof that the architects purchased items which had come from out of state, which is almost certainly the case, the link with interstate commerce would have been established. However, the government did not offer proof of the architects' activity in interstate commerce. Instead, the government introduced evidence that the school board purchased items from outside the state of Alabama, and the government was thus required to establish that the school board's assets were depleted in some way.

In order to establish that the school board's assets were depleted as a result of the extortion scheme, the government offered proof that the school board received less valuable services for its money because the architects were selected based upon their willingness to pay kickbacks rather than based upon their professional abilities.[1] There was evidence that Grider selected architects who were struggling financially and who were thus more susceptible to his pressure. At one point, Alexander asked Landrum to expedite payment to one of the architects because the architect was going into debt and needed money. There was testimony by two of the architects indicating that they were indeed struggling. Landrum also testified that one of the architects was constantly behind schedule and that other architects had to be called in to help with the work. Landrum stated that he had more problems with this dilatory architect than he had ever experienced with another architect. Having reviewed the evidence in the record, we conclude that the government offered sufficient proof to support a finding that the school board received less than it otherwise would have as a result of the appellants' scheme.[2] It is clear that the architects were not the only victims of the extortion. This depletion of the school board's assets, combined with the board's activity in interstate commerce, establishes the minimal effect on interstate commerce required under the Hobbs Act.

■ The next contention under count two is raised only by appellant Grider. He challenges the admission of testimony by one of the architects, J. Martin Smith, regarding conversations he had with Grider during the summer of 1984 in which Grider indicated that there was a "finders fee" for the architectural work. Grider argues that this was a prejudicial variance from the indictment which charged a conspiracy "commencing on or about the 13th day of October, 1980, and continuing to on or about February 2, 1984...." We disagree that there was an impermissible variance.

The law in this circuit clearly holds the following: "[a] variance between dates alleged and dates proved will not trigger reversal ... as long as the date proved falls within the statute of limitations and before the return date of the indictment." *United States v. Harrell,* 737 F.2d 971, 981 (11th Cir.1984), *cert. denied,* 469 U.S. 1164, 470 U.S. 1027, 105 S.Ct. 923, 1392, 83 L.Ed. 2d 935, 84 L.Ed.2d 781 (1985). *See also Russell v. United States,* 429 F.2d 237, 238 (5th Cir.1970). In *Harrell,* 737 F.2d at 981, the indictment charged the defendants with possession of cocaine "[i]n or about February 1980," while the proof at trial established possession during the summer of 1980 at the earliest. This court held that there was no prejudicial variance. The sim-

---

1. The government could not show that the board's assets were depleted more directly through higher fees because the architects' fees were established independently by the State Building Commission.

2. The specific question of whether the architects' services were less valuable was not submitted to the jury in the court's instruction on the interstate commerce issue. The jury is, of course, required to evaluate the underlying facts on the question of whether interstate commerce was affected. *United States v. Hyde,* 448 F.2d

815, 839 & n. 34 (5th Cir.1971), *cert. denied,* 404 U.S. 1058, 92 S.Ct. 736, 30 L.Ed.2d 745 (1972). In this case, a factual issue was raised as to the value of the architects' services, but the issue was not presented to the jury. However, the defendants failed to object to the jury instruction on interstate commerce, and they are thus precluded from raising that particular issue on appeal. Fed.R.Crim.P. 30. It is clear that this omission in the instruction on interstate commerce does not rise to the level of plain error. Fed.R.Crim.P. 52(b).

ilarity between the situation in *Harrell* and the situation in the present case is substantial, and we find *Harrell* controlling.

■ The requirement that the allegations in the indictment and the proof at trial correspond serves two purposes: it insures that the defendant is properly notified of the charges so that he may present a defense, and it protects the accused against the possibility of another prosecution for the same offense. *See Berger v. United States*, 295 U.S. 78, 82, 55 S.Ct. 629, 630–31, 79 L.Ed. 1314 (1935); *Harrell*, 737 F.2d at 981. We find nothing in the record to indicate that differences between the dates in the indictment and the dates of the proof offered at trial undermined the defendants' right to proper notice of the charges or exposed them to the danger of a second prosecution for the same offense. The indictment clearly charged a scheme to extort money from architects, including Smith, who obtained contracts with the school board. This was the crime charged and proved. Moreover, the indictment specifically mentioned that Grider expected Smith to pay a "finders fee," but that Smith refused to pay. Therefore, Smith's testimony regarding conversations with Grider about the "finders fees" could not have substantially prejudiced the defendants through surprise, regardless of the difference in dates. Because this evidence did not constitute an impermissible variance, there was no error in the district court's admission of the evidence against Grider.[3]

■ Alexander also challenges an evidentiary ruling by the district court. He argues that the district court improperly admitted testimony by one of the architects, Richard Templeton, under Fed.R. Evid. 801(d)(2)(E). The court allowed Templeton to testify that Grider told him that Alexander would have to be paid some percentage of the fee. In order for evidence to be admissible under Rule 801(d)(2)(E),

the government must prove the following by a preponderance of the evidence: (1) that a conspiracy existed; (2) that the declarant and the defendant were both members of the conspiracy; and (3) that the statement was made during the course of and in furtherance of the conspiracy. *United States v. Zielie*, 734 F.2d 1447, 1457 (11th Cir.1984), *cert. denied*, 469 U.S. 1189, 1216, 105 S.Ct. 957, 83 L.Ed.2d 964 (1985). In making this determination, the court may consider the co-conspirator statement itself as evidence of the conspiracy. *Bourjaily v. United States*, —— U.S. ——, 107 S.Ct. 2775, 2782, 97 L.Ed.2d 144 (1987). Based upon the evidence before the district court, including Templeton's testimony which was strong evidence of a conspiracy, the court's factual finding that the requirements of Rule 801(d)(2)(E) were met was not clearly erroneous. *See Zielie*, 734 F.2d at 1457 (determination of the requirement under Rule 801(d)(2)(E) is a factual determination subject to the clearly erroneous standard of review). There was no error in the admission of this testimony.

■ The appellants also contend that the evidence was not sufficient to support their convictions under count two. In conjunction with the sufficiency challenge, the appellants claim that the verdict may not stand because the jury was inconsistent in finding appellants guilty and Bosarge not guilty. Neither argument has merit. In reviewing the sufficiency of the evidence, our inquiry is whether "a reasonable trier of fact could find that the evidence establishes guilt beyond a reasonable doubt." *United States v. Bell*, 678 F.2d 547, 549 (5th Cir. Unit B 1982) (en banc) (footnote omitted), *aff'd*, 462 U.S. 356, 103 S.Ct. 2398, 76 L.Ed.2d 638 (1983). In this case, there was substantial evidence of the appellants' guilt, including strong testimony by several victims of the appellants' scheme. The government's evidence was clearly sufficient. With respect to any possible inconsistency in the jury's verdict, the law is

---

**3.** The district court assumed that Smith's testimony would amount to an impermissible variance. As a result, the court did not admit the evidence against Alexander or Bosarge, but the court allowed the evidence against Grider under

Fed.R.Evid. 404(b). Because we find that there was no impermissible variance, we need not address the more limited question of admissibility under Rule 404(b).

clear: "[i]nconsistency in a verdict ... is not a sufficient reason to set it aside." *United States v. Alvarez*, 755 F.2d 830, 852 (11th Cir.1985), *cert. denied*, 474 U.S. 905, 106 S.Ct. 274, 88 L.Ed.2d 235 (1985), —— U.S. ——, 107 S.Ct. 2489, 96 L.Ed.2d 380 (1987). There was ample evidence to support the jury's conclusions in this case, and the appellants' attacks on the sufficiency of the evidence and the reasonableness of the jury's verdict are without merit.

■ Finally, Alexander challenges the district court's denial of his motion for a change of venue due to prejudicial pretrial publicity. The district court held a hearing on this issue, and determined that drawing the venire from the entire district, combined with meaningful voir dire, would insure that Alexander received a fair trial. The district court's findings of fact on this issue are not clearly erroneous, and the denial of Alexander's motion for a change of venue was proper. Furthermore, despite Alexander's contentions, it is clear that this is not one of those rare and "extreme" cases where the court must presume prejudice. *See, e.g., Coleman v. Kemp*, 778 F.2d 1487 (11th Cir.1985), *cert. denied*, 476 U.S. 1164, 106 S.Ct. 2289, 90 L.Ed.2d 730 (1986). Alexander's claim that he could not receive a fair trial in the Southern District of Alabama is without merit.

### C. RICO

■ The appellants were convicted of racketeering offenses under count one of the indictment. In order to convict the appellants under this count, the government must establish a "pattern of racketeering activity." 18 U.S.C. § 1962(c). This requires that the government prove that each individual participated in two or more predicate acts or crimes. *United States v. Phillips*, 664 F.2d 971, 1011 (5th Cir. Unit B.1981), *cert. denied*, 457 U.S. 1136, 102 S.Ct. 2965, 73 L.Ed.2d 1354 (1982), 459 U.S. 906 (1982); *United States v. Bright*, 630 F.2d 804, 830 & n. 47 (5th Cir.1980). The jury found Grider guilty of mail fraud and the Hobbs Act conspiracy, thus establishing two predicate acts. The jury found Alexander guilty of mail fraud, the Hobbs Act conspiracy, and violation of the Hobbs Act through the scheme involving the efficiency study contract. Because we reverse the mail fraud convictions, there are no longer two predicate acts to support Grider's RICO conviction. With respect to Alexander, however, there remain two predicate acts to support his RICO conviction, and we find that there was sufficient evidence to support that conviction. Therefore, Grider's conviction under count one must be reversed, and Alexander's conviction under count one must be affirmed.

### III. CONCLUSION

For the reasons discussed above, the appellants' convictions are AFFIRMED in part and REVERSED in part.