[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 27, 2005
THOMAS K. KAHN
CLERK

_____

No. 03-15902

_____

D. C. Docket No. 96-07266-CV-DTKH

TERRY M. JAMERSON,

Petitioner-Appellant,

versus

SECRETARY FOR THE DEPARTMENT OF CORRECTIONS,

Respondent-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(May 27, 2005)

Before ANDERSON, PRYOR and HILL, Circuit Judges.

PRYOR, Circuit Judge:

The sole issue in this appeal is whether Terry M. Jamerson is entitled to

federal habeas relief because a Florida trial court allegedly instructed the jury that it could find Jamerson guilty as an accomplice to second-degree murder if the jury found Jamerson guilty of any lesser-included offense. Because the jury instructions, in the context of the entire charge, fairly and correctly stated the law of Florida, we conclude, under the highly deferential standard of habeas review, that Jamerson was not denied due process. We affirm the denial of habeas relief.

## I. BACKGROUND

Jamerson's conviction arises from the 1992 murder of Luyen Nguyen, a 19-year-old student of Vietnamese descent, who was beaten to death by a group of drunken young men. According to testimony at Jamerson's trial, Nguyen and two friends, Jeff Sintay and Ryan Guerra, attended a party in Coral Springs, Florida on August 15, 1992. The three left the party after 45 minutes. Sintay testified that, as they were leaving the apartment where the party was held, Sintay overheard several derogatory remarks directed at Nguyen. Those remarks included the racial slurs "chink" and "Vietcong."

Sintay told Nguyen about the epithets. Nguyen said that he wanted to return to the party to "talk" about the insults. Concerned about "the type of element" at the party, Sintay convinced Nguyen not to return to the party.

On the sidewalk outside the apartment building, Sintay, Guerra, and Nguyen

2

encountered Bradley Mills, who had also attended the party. Nguyen asked Mills about the comments made at the party. Mills then called several partygoers gathered on a balcony overlooking the sidewalk and said "this kid's got a problem." Mills also called for "Chris" and "Jammer" to come down to the sidewalk.

Sintay testified that several persons, including Jamerson, surrounded Nguyen. An argument ensued, and Jamerson pushed Nguyen after another person slapped Nguyen in the face. After Jamerson pushed Nguyen, members of the group surrounding Nguyen struck him numerous times. Sintay testified that, after the attack, Jamerson ran past Sintay and stated, "We got him good, but someone got me good too." Nguyen died from a blow to the head that broke his neck and severed an artery.

Other witnesses corroborated Sintay's testimony. David Michaelson testified that he saw a group of persons "kicking and punching and jumping on" Nguyen, and Jamerson was part of that group. John Russ testified that he heard a "lot of yelling," including the phrase "I hate Vietnamese." Russ also testified that he saw Jamerson and another person walking away from where Nguyen lay on the ground after the beating. Mathew Metzger, who knew Jamerson and was a resident of the apartment complex, testified that Jamerson came to his apartment

3

that night, used Metzger's telephone, and asked Metzger about the best way to leave the apartment complex without being seen.

Jamerson and two others were charged with second-degree murder and tried as principals in the first degree. At the close of evidence, the state trial court instructed the jury on the elements of second-degree murder, along with the lesser-included offenses of manslaughter, aggravated battery, and battery. The trial court also instructed the jury regarding the Florida law of principals, which holds accountable, as a principal in the first degree, any person who aids in the commission of any criminal offense, regardless of whether that person was present at the commission of the offense. Fla. Stat. § 777.011.

The trial court gave the Florida Standard Jury Instruction then in effect regarding principal liability:

> If two or more persons help each other commit a crime and the Defendant is one of them, the Defendant is a principal and must be treated as if he had done all of the things the other person or persons did if the Defendant:
>
> Number one, knew what was going to happen.
>
> And, number two, intended to participate actively or by sharing in an expected benefit.
>
> And, number three, actually did something by which he intended to help commit the crime.

4

Help means to aid, plan or assist.

To be a principal, the Defendant does not have to be present when the crime is committed.

During deliberations, the jury asked the trial court the following question: "Regarding the principals clause in number one, 'knew what was going to happen,' do we interpret this to mean death/serious bodily injury or fight?" After extensive argument, and over the objections of defense co-counsel, the trial court answered that the liability of a principal applied to each criminal charge:

Members of the jury, the law of principals applies to the main accusation, second degree murder. It also applies to the lesser included offenses of manslaughter, aggravated battery and battery.

In answer to your specific question, quote, knew what was going to happen, unquote, that pertains to a criminal act. Knew what was going to happen pertains to a criminal act.

The jury returned to its deliberations, but later asked a second question about principal liability, which was accompanied by a diagram:

[I]f we have established that a specific crime was committed between C and D, and there is a chart here for [the court], under the law of principals, could anyone who committed a lesser related crime between A and C be charged as a principal with the crime committed between C and D?

Over the objections of defense co-counsel, the trial court told the jury to read the earlier instructions again:

5

With respect to this question, I would ask all of you to deliberate further. Reread my instructions on the law. And since you have already focused in on the law of principals, I would ask you to reread the law of principals.

Hopefully, whatever facts you have established will be able to answer this question under the law as I have already given it to you . . . .

You are free to revisit this specific question or a related question. If you can answer this question from what I have just said, and if it triggers some other type of related question, in short, take another hard look at the instructions on the law.

If your question is a factual one, I can't answer that. I have no right to. If you feel that your question is purely a legal question in which you are asking me to expand or amplify on either the law of principals or some other legal concept, ask the question again.

The jury asked no additional questions and, after further deliberations, found Jamerson guilty of second-degree murder. The trial court sentenced Jamerson to 22 years in prison. Jamerson appealed.

On direct appeal, Jamerson argued that the trial court misstated the law in its answers to the jury's questions regarding the phrase "knew what was going to happen." Jamerson contended that the trial court instructed the jury that so long as the jury found Jamerson guilty of any crime, it could convict him of second-degree murder under the law of principals. The appellate court rejected this argument, with one judge dissenting, and affirmed Jamerson's conviction without a written

6

opinion. <u>Jamerson v. State</u>, 677 So. 2d 1299 (Fla. Dist. Ct. App. 1996) (per curiam). The dissenting judge contended that the answers given by the trial judge "beg[ged] the question asked by the jury" and "could have potentially misled the jury to believe that if a defendant knew any criminal act was going to happen, then that defendant could be convicted of second-degree murder." <u>Id.</u> at 1300 (Pariente, J., dissenting).

In October 1996, Jamerson filed in the Southern District of Florida a petition for a writ of habeas corpus, under 28 U.S.C. section 2254. A magistrate judge issued a report and recommendation that the petition be denied, and the district court adopted that recommendation in December 1998. Jamerson appealed to this Court, where we concluded that the district court did not apply the correct standard to determine whether the alleged error deprived Jamerson of due process. <u>Jamerson v. Sec'y for the Dep't of Corrs.</u>, No. 00-15605, slip op. at 3 (11th Cir. June 26, 2001) (per curiam). We stated that the proper standard was whether the error had "substantial and injurious effect or influence in determining the jury's verdict." <u>Id.</u> at 2 (quoting <u>California v. Roy</u>, 519 U.S. 2, 5, 117 S. Ct. 337, 338 (1996)). We remanded the case for review under the correct standard and possible review for harmless error:

> [T]he district court is free to determine in the first instance

whether the jury instruction and supplemental explanation in question constituted federal constitutional error under the proper standard and, if the court decides it did, then decide whether the error was harmless under the proper standard. Or the court may initially determine if the alleged error was harmless.

Id. at 4 (footnote omitted).

The magistrate judge issued a report and recommendation that the petition be denied. The magistrate judge stated that the jury instructions and later answers to the jury's questions, viewed as a whole, fairly and accurately stated the law. The magistrate judge further recommended that, even if the instructions were erroneous, the error was harmless. The magistrate judge noted that "the mere possibility of jury confusion does not establish the substantial and injurious effect on the jury's verdict" that is required for habeas relief, and "consideration of the jury instructions as a whole and the trial record" showed that the jury determined Jamerson intended to participate in second-degree murder.

After the magistrate judge issued the report and recommendation, but before the district court issued its ruling, Jamerson was released unconditionally from custody. The district court ordered supplemental briefing on the issue of mootness. After hearing from the parties, the district court concluded that, under Minor v. Dugger, 864 F.2d 124, 127 (11th Cir. 1989), Jamerson's petition was not moot, because of the "possibility of collateral legal consequences" from

8

Jamerson's conviction. The district court then adopted the report and recommendation of the magistrate judge and denied Jamerson's petition. This appeal followed.

## II. STANDARD OF REVIEW

We review de novo the denial of a petition for writ of habeas corpus. Wright v. Hopper, 169 F.3d 695, 701 (11th Cir. 1999), cert. denied, 528 U.S. 934, 120 S. Ct. 336 (1999). Because Jamerson filed his petition after April 24, 1996, this case is governed by the Antiterrorism and Effective Death Penalty Act (AEDPA), which establishes a "highly deferential standard for reviewing state court judgments," Parker v. Sec'y for the Dep't of Corrs., 331 F.3d 764, 768 (11th Cir. 2003), and "prevent[s] federal habeas 'retrials' . . . to ensure that state-court convictions are given effect to the extent possible under law." Bell v. Cone, 535 U.S. 685, 693, 122 S. Ct. 1843, 1849 (2002). A federal court can grant habeas relief from a state conviction in two circumstances: (1) where the state court proceeding "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States"; or (2) where the state court proceeding "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. §

2254(d); see also Diaz v. Sec'y for the Dep't of Corrs., 402 F.3d 1136, 1141 (11th Cir. 2005).

Federal habeas proceedings "are not forums in which to relitigate state trials." Barefoot v. Estelle, 463 U.S. 880, 887, 103 S. Ct. 3383, 3392 (1983). The writ of habeas corpus protects persons against "extreme malfunctions in the state criminal justice systems," Jackson v. Virginia, 443 U.S. 307, 332 n.5, 99 S. Ct. 2781, 2796 n.5 (1979) (Stevens, J., concurring in the judgment), and habeas relief has historically been limited "to those whom society has grievously wronged." Brecht v. Abrahamson, 507 U.S. 619, 637, 113 S. Ct. 1710, 1721 (1993) (citation and quotation marks omitted). Because "[d]irect review is the principal avenue for challenging a conviction," and habeas proceedings are "secondary and limited," id. at 633, 113 S. Ct. at 1719, "an error that may justify reversal on direct appeal will not necessarily support a collateral attack on a final judgment." Id. at 634, 113 S. Ct. at 1720 (citations and quotation marks omitted).

Federal habeas relief is unavailable "for errors of state law." Estelle v. McGuire, 502 U.S. 62, 67, 112 S. Ct. 475, 480 (1991) (quoting Lewis v. Jeffers, 497 U.S. 764, 780, 110 S. Ct. 3092, 3102 (1990)). A jury instruction that "was allegedly incorrect under state law is not a basis for habeas relief," id. at 71-72, 112 S. Ct. at 482, because federal habeas review "is limited to deciding whether a

conviction violated the Constitution, laws, or treaties of the United States." Id. at 68, 112 S. Ct. at 480. Unlike state appellate courts, federal courts on habeas review are constrained to determine only whether the challenged instruction, viewed in the context of both the entire charge and the trial record, "'so infected the entire trial that the resulting conviction violate[d] due process.'" Id. at 72, 112 S. Ct. at 482 (quoting Cupp v. Naughten, 414 U.S. 141, 147, 94 S. Ct. 396, 400-01 (1973)).

### III. DISCUSSION

To resolve this appeal, we must review two issues. We first address our jurisdiction and consider whether the unconditional discharge of Jamerson's sentence renders this appeal moot. We then consider whether the jury instructions given by the trial court violated the federal guarantee of due process.

*A. Jamerson's Appeal is Not Moot.*

Although Florida does not contend that Jamerson's petition is moot based on the unconditional discharge of his sentence, we must ensure that we have jurisdiction to consider this appeal. Cuban Am. Bar Ass'n, Inc. v. Christopher, 43 F.3d 1412, 1422-23 (11th Cir. 1995). Section 2254, by its literal terms, applies to persons "in custody," but the Supreme Court has held that section 2254(a) is satisfied so long as the petitioner is in custody when the petition is filed. Maleng

11

v. Cook, 490 U.S. 488, 490-91, 109 S. Ct. 1923, 1925 (1989) (per curiam). Completion of a criminal sentence does not render a petition for habeas relief moot, because the ongoing collateral consequences of a wrongful conviction, such as the possible enhancement of a later criminal sentence on the basis of the earlier wrongful conviction, satisfy the case-or-controversy jurisdictional requirement of Article III of the Constitution. Spencer v. Kemna, 523 U.S. 1, 7-8, 118 S. Ct. 978, 983 (1998). The unconditional discharge of Jamerson's sentence, therefore, does not moot this appeal.

### B. The Jury Instructions Did Not Violate Due Process.

Jamerson contends that the answers of the trial court to the jury's questions erroneously permitted the jury, in violation of In re Winship, 397 U.S. 358, 90 S. Ct. 1068 (1970), to convict Jamerson of second-degree murder without a finding of the required state of mind. Jamerson contends that the instructions incorrectly stated that, if the jury found Jamerson guilty of any crime, the jury could find Jamerson guilty of second-degree murder. We disagree. The instructions of the trial court correctly stated the law and, therefore, did not deprive Jamerson of due process. See Estelle v. McGuire, 502 U.S. at 72, 112 S. Ct. at 482.

Jamerson was prosecuted as a principal in the first degree. See Fla. Stat. § 777.011. The Supreme Court of Florida has held that to be guilty as a principal for

12

a crime committed by another, the defendant "must intend that the crime be committed and do some act to assist the other person in actually committing the crime." Staten v. State, 519 So. 2d 622, 624 (Fla. 1988). In other words, to be liable as a principal for a criminal act, Jamerson must have intended that the crime charged be committed.

We must consider together the instructions on each criminal charge and principal liability in reviewing whether the later answers of the trial court to the jury's questions violated due process. Estelle v. McGuire, 502 U.S. at 72, 112 S. Ct. at 482. It is undisputed that the trial court correctly instructed the jury on the elements of second-degree murder, including the required mental state, and the trial court correctly instructed the jury on the lesser-included offenses of manslaughter, aggravated battery, and battery. It is also undisputed that the trial court gave the standard jury instruction then in effect on the law of principals.

With those indisputably correct instructions in mind, we next consider the questions of the jury and the answers provided by the trial court. Regarding the phrase "knew what was going to happen" in the instruction about principal liability, the jury asked "do we interpret this to mean death/serious bodily injury or fight?" The trial court answered that "the law of principals applies to the main accusation, second degree murder. It also applies to the lesser included offenses

13

of manslaughter, aggravated battery and battery. In answer to your specific question, quote, knew what was going to happen, unquote, that pertains to a criminal act."

This answer to the jury's question correctly stated the relevant law. The trial court explained that the law of principals applied to <u>all</u> offenses the jury was considering—second-degree murder, manslaughter, aggravated battery, and battery—and correctly stated that "knew what was going to happen" pertained to each of those criminal acts. By instructing the jury that "knew what was going to happen" pertained to a criminal act, the trial court correctly answered the jury's question. This appeal is not even as close as <u>Estelle v. McGuire</u>, where the Supreme Court held, on habeas review, that a deviation by a trial court from a standard California jury instruction regarding evidence of a characteristic plan or scheme did not violate due process. <u>Id.</u> at 71, 75, 112 S. Ct. at 481, 484. The Court held that there was not a "reasonable likelihood" that the jury misused the nonstandard instruction, because the instruction had to be read in the context of the entire charge and the trial court gave a limiting instruction. <u>Id.</u> at 74-75, 112 S. Ct. 483-84.

Even if the answer of the trial court to the jury's first question could have been clearer, we may not judge it "in artificial isolation," but must consider the

14

jury instructions as a whole. Id. at 72, 112 S. Ct. at 482 (quoting Cupp, 414 U.S. at 147, 94 S. Ct. at 400-01). Viewed in that context, the answer of the trial court did not "so infect[] the entire trial that the resulting conviction violate[d] due process." Id. (citation and quotation marks omitted). The trial court correctly instructed the jury about the elements of each charge and stated that the jury had to find Jamerson possessed a depraved mind to convict him of second-degree murder: "Before you can find any Defendant guilty of second degree murder, the State must prove . . . [that] there was an unlawful killing of Luyen Nguyen by an act imminently dangerous to another and evincing a depraved mind regardless of human life." In the standard jury instruction on principals, the jury was also required to determine whether Jamerson "actually did something by which he intended to help commit the crime." That instruction did not say "help commit any crime," and the trial court did not say, in its answer to the jury's first question, that "knew what was going to happen" pertained to any crime.

In response to a follow-up question, the trial court instructed the jury to review and consider all of the earlier instructions. The jury asked whether "anyone who committed a lesser related crime between A and C [could] be charged as a principal with the crime committed between C and D," and the trial court instructed the jury to "[r]eread my instructions on the law." Because we

15

presume that juries follow instructions, Stevens v. Zant, 968 F.2d 1076, 1086 (11th Cir. 1992), we presume that the jury in Jamerson's trial followed the instructions on second-degree murder, lesser-included offenses, and the law of principals, which, taken as a whole, correctly stated the law. The admonition of the trial court to read again all of the earlier instructions reinforces our conclusion that Jamerson was not denied due process.

We recognize that the trial court could have answered the jury's questions in greater detail, but the Constitution "entitles a criminal defendant to a fair trial, not a perfect one." Delaware v. Van Arsdall, 475 U.S. 673, 681, 106 S. Ct. 1431, 1436 (1986). Our inquiry also is not whether the challenged instructions were "undesirable, erroneous, or even universally condemned;" our inquiry is whether the instructions "so infected the entire trial that the resulting conviction violates due process." Estelle v. McGuire, 502 U.S. at 72, 112 S. Ct. at 482 (citation and quotation marks omitted). Because the instructions fairly and correctly stated the law, United States v. Russell, 717 F.2d 518, 521 (11th Cir. 1983), they did not violate due process.

## IV. CONCLUSION

Because the trial court correctly stated the law in its answers to the questions from the jury, Jamerson's conviction did not violate due process. The

16

ruling of the district court, therefore, is

**AFFIRMED.**